Filed January 29, 1896.

---

No. 17,496.

## MARTIN *v.* THE STATE.

MINES AND MINING.—*Coal.—Weighing Before Screening.—When not Illegal.—Criminal Law.*—Failure to weigh coal before it is screened is not a violation of the act of March 2, 1891, providing that all coal mined under contract for payment by quantity, shall be weighed before being screened, and full weight credited to the miner, provided nothing shall be so construed as to compel payment for impurities loaded with the coal, where the only way possible to avoid paying for the impurities is by screening before weighing, and even then some impurities will be paid for.

COURTS.—*Constitutional Question, When Will Not Be Decided.*—The constitutionality of a statute will not be determined by the courts when the cause in which the determination is sought may be decided and finally disposed of without such decision.

From the Parke Circuit Court.

*E. Hunt, C. F. McNutt, J. G. McNutt* and *F. A. McNutt*, for appellant.

*W. A. Ketcham*, Attorney-General, and *M. Moores*, for State.

McCABE, J.—The appellant was convicted and fined $100, on information and affidavit filed in the Parke Circuit Court, for a violation of sections 5 and 7 of the

act approved March 2, 1891, page 58, concerning coal mining, which read as follows:

"SEC. 5.   That all coal mined in this State under contract for payment, by the ton or other quantity, shall be weighed before being screened, and the full weight thereof shall be credited to the miner of such coal, and eighty pounds of such coal as mined shall constitute a bushel, and two thousand pounds of coal as mined shall constitute a ton: *Provided*, That nothing in this act shall be so construed as to compel payment for sulphur, rock, slate, black-jack or other impurities, including dirt, which may be loaded with or amongst the coal.

"SEC. 7.   That any owner, operator, agent, lessee, superintendent, or bank boss, who shall violate the provisions of sections five (5) and six (6) of this act shall, upon conviction thereof, be fined in any sum not less than one hundred ($100) dollars for each and every day during which such violation shall continue."

The affidavit and information charged that appellant Martin, on February 13, 1894, was superintendent of mine No. 8 of the Parke County Coal Company, and that one William Cherry was employed by said company to mine coal at the rate and price of seventy cents per ton; that said Martin was operating said coal mine as superintendent of said company, and said Cherry mined a quantity of coal exceeding three tons and a half of coal for said company under a contract with said company by the ton, at the price aforesaid, in said Parke county, Indiana; and that said Martin, as such superintendent, did then and there unlawfully fail and neglect to credit and cause to be credited to said Cherry the full weight of such coal before the same was screened, then and there mined by said Cherry, because said coal so mined by said Cherry was then and there screened before it was weighed, and which, after being so

screened, weighed three and one-half tons, contrary to the form of the statute.

The circuit court overruled a motion to quash the information and overruled a motion for a new trial, after finding the defendant guilty, and after which the judgment of conviction mentioned was rendered.

Counsel for appellant inform us in their brief that "It is the purpose of appellant to attack the constitutionality of the act under which he was prosecuted. Indeed, such is the sole purpose of this appeal, and it is not the desire of the appellant to present or have passed upon any other question."

Then appellant's counsel go into a learned and extensive argument against the constitutionality of the act, which is met by the attorney-general in an equally elaborate and learned argument in support of its constitutionality. The question thus presented is a grave one. But in another place in appellant's brief the attempt is made to show that the finding and judgment are wrong, even if the statute should be held to be valid.

Among other things it is said by the learned counsel for the appellant, " That it is undisputed that the coal mined by Cherry contained sulphur, slate, black-jack and other impurities. It further clearly appears that section 5 of the act of 1891 is impossible of execution from the following evidence of Cherry :

" 'Quest.   Is there any known practicable way in the business of bituminous coal mining to separate the sulphur, slate, black-jack, dirt and other impurities from the fine coal or the slack ?'

" 'Ans.   No.   The only thing that can be done is to separate the lump coal from the slack.   The part that does not pass through the screen is called lump coal, and is the coal of commerce.   The part that passes

through the screen is called slack, and is composed of fine coal mixed with sulphur, slate, black-jack, dirt and other impurities. There is no way known to the business of mining by which the fine coal of the slack can be separated from the sulphur, black-jack, dirt and other impurities contained in the slack.'

"'Quest. How about the lump coal?'

"'Ans. Most of the impurities are contained in the 'slack;' but the lump coal also contains some sulphur, slate, black-jack and other impurities. It is impossible in any practicable way to separate the coal of the lump coal from the sulphur, slate, black-jack and the like contained in the lump coal.'

"'Quest. Is there any practicable way in the business of coal mining, either before or after screening, by which the pure coal may be completely and fully separated from the sulphur, slate, black-jack and other impurities?'

"'Ans. No: All that can be done is to separate the lump coal with its impurities from the slack with its impurities by screening.'

"'Quest. State whether or not in your opinion it was practical to mine the coal you were working in that day and weigh and pay for it before screening such dirt and other small refuse matter?'

"'Ans. It would have been impossible to have weighed the coal that I mined that day before screening it, and given me credit with the weight thereof, without also including in such weights the weight of such dirt and other refuse matter.'"

While section 5 imperatively requires the coal to be weighed before it is screened, and the full weight thereof to be credited to the miner of the same, yet the proviso qualifies such requirement by providing "That nothing in this act shall be so construed as to compel pay-

ment for sulphur, rock, slate, black-jack or other impurities," etc.

This was the State's evidence, and stands uncontradicted; and from it the conclusion is irresistible that the only way possible to avoid paying for mining the impurities excepted out of the statute was by screening before weighing the coal, and even then some impurities would be paid for, but in small quantity compared with that resulting from weighing before screening the particular coal mined by Cherry involved in the prosecution.

The proviso as imperatively requires the statute to be so construed as not to compel payment for such impurities as it requires any coal mined to be weighed before it is screened.

And as the evidence makes it clear that the only way to avoid payment for such impurities in the case of the particular coal here involved was to screen it before it was weighed, therefore the failure to weigh before it was screened was not a violation of the fifth section, and hence the appellant under the evidence was not liable to the penalty provided in the seventh section.

Therefore, the finding of the court was contrary to the law and the evidence, which were assigned as causes in the motion for a new trial.

It is settled law in this court that the constitutionality of a statute will not be determined by this court when the cause in which its determination is sought may be decided and finally disposed of without such decision.

If counsel wished to have no other question than the constitutionality of the statute passed on, they should have refrained from taking steps to raise other questions liable to be decisive of the case, without touching the constitutional question. They should have stood

First Nat'l Bank of Crawfordsville *v.* Dovetail Body & Gear Co. *et al.*

upon their motion to quash and made no motion for a new trial. But they not only made a motion for a new trial, but they have presented the errors assigned therein by their brief.

It follows from what we have said, that the circuit court erred in overruling the motion for a new trial.

The judgment is reversed, with instructions to the trial court to sustain appellant's motion for a new trial.

Filed January 29, 1896.