## THE CHICAGO AND EASTERN ILLINOIS RAILROAD COMPANY *v.* GRIMM.

[No. 3,019. Filed May 29, 1900. Rehearing denied Nov. 16, 1900.]

NEGLIGENCE. — *Question of Fact.* — *Railroads.* — The question as to whether a railroad company was guilty of negligence in running a passenger train with the locomotive in the rear was properly submitted to the jury, in an action by a passenger for personal injuries, caused by the train striking a horse on the track.  *p. 497.*

SAME.—*Proximate Cause.*—*Railroads.*—The negligence of a railroad company in running a train with the locomotive in the rear was the proximate cause of an injury to plaintiff while a passenger thereon, caused by the train striking a horse on the track.  *pp. 497, 498.*

SPECIAL FINDING.— *Verdict.*— *Evidence.*— *Railroads.*— *Personal Injuries.*—A special finding in an action against a railroad company for damages for personal injuries to plaintiff while a passenger on defendant's train, caused by the train striking a horse on the track, to the effect that the train was running at a speed of twelve miles an hour, over a safe track, well fenced, with good cattle-guards at crossings, safe cars and locomotive, in charge of competent men, when the horse suddenly sprang upon the track, fifteen or twenty feet in front of the train, and it was impossible to stop the train and avoid a collision, is not in irreconcilable conflict with a general verdict for plaintiff, where the evidence showed that the train was being run backward, with a light caboose on the front, and that a train run in such manner was easily derailed by coming in contact with an obstruction on the track.  *pp. 498-500.*

CARRIERS.—*Injury of Passenger.*—*Negligence.*—Where a passenger is injured by the derailment of a train he is only required to show that he was injured without fault on his part, the law then presumes negligence upon the part of the carrier, and it devolves upon the carrier to remove such presumption.  *p. 500.*

EVIDENCE. — *Expert Testimony.*— *Railroads.*— The testimony of an experienced railroad man as to the danger in running a train backward is admissible in the trial of an action for personal injuries received by a passenger who was injured while riding on a train run with the engine in the rear.  *pp. 501, 502.*

Chicago, etc., R. Co. *v.* Grimm.

FVIDENCE.—*Rebuttal.*—*Damages.*—*Railroads.*—Where, in the trial of an action against a railroad company for injuries received by a passenger caused by a collision of the train with a horse on the track, the defendant introduced evidence to the effect that the road was fenced, and stock was prohibited from running at large, it was proper for plaintiff to prove in rebuttal that stock was frequently seen on the road. *pp. 504, 505.*

CARRIERS. — *Personal Injury of Passenger.* — *Negligence.* — *Instructions.*—An instruction in the trial of an action against a railroad company for personal injuries to a passenger that when a carrier receives a passenger on its train it undertakes to carry him safely to his destination was not misleading when considered with another instruction that the greatest possible care to be exercised by a railroad company for the safety of its passengers is not to be understood as requiring the utmost degree of care which the mind can attain to or is capable of inventing, but simply means the greatest degree of care that is consistent with the particular mode of transportation. *pp. 505-508.*

From the Clay Circuit Court. *Affirmed.*

*G. A. Knight,* for appellant.
*S. D. Coffey,* for appellee.

COMSTOCK, J.—The complaint in this cause was in two paragraphs. The first paragraph, omitting its formal parts, avers that on the 19th day of November, 1897, and for a long time prior thereto, the defendant had been in the business of a common carrier in carrying and transporting passengers for hire over its railroad from the city of Brazil to a coal mine known as the Standard Block Coal Company and to return therefrom to the city of Brazil; that on said day the defendant undertook and agreed with the plaintiff, for a reasonable compensation theretofore paid by him to said defendant, safely to carry and transport the plaintiff from said city of Brazil to the said Standard Block Coal Company mine and return in good and comfortable cars; that, pursuant to said agreement and undertaking, the said plaintiff entered the cars of said defendant at the said city of Brazil, and was safely carried and transported therefrom to the said mine, but the plaintiff alleges that said defendant did not keep its agreement and undertaking safely to

carry and transport the plaintiff from said mine back to the said city of Brazil in good comfortable cars, but failed therein in this, to wit: that the plaintiff entered the cars of said defendant at said mine known as Standard Block Coal Company, for the purpose of being carried and transported from said mine to the city of Brazil, where he resided, which car was in a train consisting of eight cars; that, instead of hitching the engine, by which said cars and train were to be moved, to the front of said train so that the engineer might and could see and observe any obstructions on the railroad track of defendant, and check said train in time to prevent and avoid a collision with such obstruction, it negligently and carelessly attached said engine to the rear of said train, and carelessly and negligently run said train backwards at a rapid rate of speed, to wit, nearly twenty miles per hour; that while so running said train backwards, the engineer in charge of said engine was unable to see and observe obstructions on said track in time to avoid collision therewith, and by reason of the fact that the cars were not preceded by an engine they were liable to be derailed upon coming in contact with any obstruction on said track; that while thus negligently and carelessly running said train backwards at a speed of nearly twenty miles per hour, the same came in contact with a horse on said track, by reason of which the cars ahead of him were derailed and thrown from the track, causing the other cars to jam together with great force and violence, thereby throwing plaintiff from his seat with great force against some object in said car, striking him in the small of the back and side, whereby he received the injuries complained of. The acts of negligence charged in the second paragraph are substantially the same as those set out in the first. A demurrer was overruled to each paragraph; the cause put at issue by general denial. A trial resulted in a general verdict in favor of appellee for $1,488. With the general verdict answers to interrogatories were returned.

The errors assigned are: (1) The overruling of appel-

lant's demurrer to each paragraph of the complaint; (2) the overruling of appellant's motion for judgment in its favor on the answers of the jury to interrogatories, notwithstanding the general verdict; (3) overruling appellant's motion for a new trial.

Counsel for appellant contend that the complaint is in tort; for appellee, that it is in contract. Conceding, without deciding, that it is in tort, it will be so treated in this opinion.

It is urged against the complaint (1) that no actionable negligence is charged; (2) that the acts of negligence attempted to be charged are not shown to be the proximate cause of appellee's injury. We would not be warranted in holding as a matter of law that the operating of a train of cars as averred in the complaint was not negligence. It was a question, in our opinion, to be submitted to the jury under proper instructions. As said by the Supreme Court in *Evansville, etc., R. Co.* v. *Krapf,* 143 Ind. 547: "It is not necessary in such a complaint to recite all the facts and circumstances that may tend to show that the act complained of was negligent. It is settled by the decisions of this court that a complaint charging the defendant with an act injurious to plaintiff, with a general allegation of negligence in the performance of the act, is sufficient to withstand a demurrer to the complaint for want of sufficient facts; and that under such allegation any evidence tending to show that the act was negligently done may be admitted; otherwise the evidence would have to be pleaded instead of the facts." Upon the subject of proximate cause, the Supreme Court in *Louisville, etc., R. Co.* v. *Lucas,* 119 Ind. 583, 6 L. R. A. 197, said: "It is not necessary that precisely such an accident as actually occurred might be anticipated, for there is liability if it was probable that some injury might result from a negligent breach of duty. We have disposed of the argument of appellant which asserts that the negligence attributed to it was not the proximate cause of appellee's in-

jury in what we have said, for, as the authorities all declare, if the injury resulted from the negligent act of defendant, that act will be deemed the proximate cause, unless the consequences were so unnatural and unusual that they could not have been foreseen and provided against by the highest practicable care. The authorities we have cited declare the doctrine we have stated, as do those which follow, and many others. Bishop Non-Contract Law, §§46, 457; Wharton on Negligence (2nd ed.), §77." The consequences following the running of the train with the locomotive in its rear as averred in the complaint were not so unnatural or unusual that they could not have been foreseen. The objections to the complaint are not well taken.

Counsel for appellant next contend that the court erred in refusing to render judgment in its favor on the answers of the jury to the special interrogatories notwithstanding the general verdict, upon the following grounds: (1) The special findings of fact do not show that the negligence charged in the complaint was the proximate cause of appellee's injury; (2) because they show that appellant exercised the highest degree of practicable care to guard appellee against injury; (3) because the collision with the horse was unavoidable. The special facts found show the train was running at the speed of twelve miles an hour over a safe track and roadbed, with safe cars and locomotive, all properly equipped; that the road was securely fenced, with good cattle-guards at highway crossings, and wing fences thereat; with a competent and careful engineer; with engineer and fireman at their posts looking ahead for signals; with conductor standing on steps at one side on front end of caboose; with a brakeman standing on steps at the other side on front end of caboose; both provided with lanterns to signal engineer in case of danger; a brakeman standing at the brake on platform at front end of caboose; all three of these in a position to see ahead, and all watching for dangers ahead; that it was light enough to see 200 or 300 feet ahead of the train; that a horse suddenly sprang upon the

track fifteen or twenty feet in front of the caboose, just inside the right of way at highway crossing; that promptly signals were given to engineer, but it was impossible to stop the train and avoid the collision by anything the engineer could have done; the collision occurred with the horse; three. cars were derailed; that appellee had frequently ridden on said train and knew how it was run and operated; that the collision with the horse was the cause of the derailment, and that the collision was unavoidable; that the engineer and brakeman used every effort to stop the train after the horse sprang upon the track; that the train was a miners' train composed of box cars; that the collision occurred, not on main line, but on a switch or lateral branch known as Caseyville branch; that said train could not be stopped in time to avoid collision, and that the horse was not observed until he sprang upon the track.

Answers of the jury to interrogatories will overthrow the general verdict only when there is such an antagonism upon the face of the record as is beyond the possibility of being removed by any evidence legitimately admissible under the issues in the cause. *Indianapolis, etc., R. Co.* v. *Lewis,* 119 Ind. 218. *Sponhaur* v. *Malloy,* 21 Ind. App. 287, 300, and authorities there cited.

Every presumption is indulged in favor of the general verdict. It implies that the jury found every fact charged in the complaint to entitle appellee to recover, and that every defense set up to defeat a recovery of the plaintiff was found against the defendant.

Is the special finding of facts irreconcilably in conflict with the general verdict? It is shown by the evidence that cattle and horses were frequently, before the accident, found on the track over which appellant ran its trains, and that the men on more than one occasion stopped the train to drive them off. When appellee was injured, appellant's train was being run backwards at the rate of twelve miles an hour with a light caboose on the front. It was shown by the testimony that a train run in this manner would be derailed in nine

instances out of ten if it came in contact with an obstruction on the track. This evidence removes any apparent conflict in the general verdict and the answers to the interrogatories as to the proximate cause of appellee's injury.

As to the second reason given for judgment on the answers to interrogatories, it is proper to say that the negligence charged is the running of a train backward at a rapid rate of speed, so that the engineer was unable to see an obstruction on the track in time to stop the train and avoid the same, and that the train was liable to be derailed by reason of the light car coming in contact with obstructions. It may be conceded that the collision with the horse was unavoidable, under the circumstances, but that was not sufficient. It only devolves upon a passenger to show that he was injured without fault on his part. The law then presumes negligence upon the part of the carrier, and it is for the carrier to remove this presumption.

In discussing the action of the court in overruling the motion for a new trial, it is claimed by counsel for appellant that the verdict is contrary to the evidence, is not sustained by sufficient evidence, and is contrary to law. The evidence discloses that at the time of the accident the train was made up of a caboose in front of seven box or freight cars in which from 300 to 400 passengers, miners, were riding, and the locomotive was attached with its front end to the rear end of the last car, pushing the train. It was running at the rate of from twelve to twenty miles an hour over a track on which horses had been frequently seen. The engine could have been placed at the front end of the train at the loss of a few minutes' time. In the opinion of experts it was dangerous to run the train in this manner. Derailment was likely to occur if the caboose came in contact with an obstruction. It was the duty of the railroad to use the highest degree of practicable care to prevent injury. *Louisville, etc., R. Co.* v. *Lucas,* 119 Ind. 583. The evidence shows that it failed to do this. It follows that the verdict is sustained by the evidence and is not contrary to law.

The admission of certain testimony is also made a reason for a new trial. Appellant objected to each of the following questions propounded to John Davis, a witness for appellee: "You may state to the jury what difference there is, if any, as to the safety of running a train backward or forward? A. Why, there is a difference in running a train forward and backward; that is, with the locomotive in the rear. Q. I'll ask you to state to the jury what effect a heavy engine has, as to the question of its weight, as to its being calculated to destroy any object on the track? A. Why, a heavy engine is more liable to destroy anything by cutting it up and not derailing the engine." The following question was asked said witness: "I'll ask you to state to the jury as an expert at what rate of speed it would be safe for a train carrying passengers to run backward? A. That would be a hard question for me to determine as an expert, as they claim my opinion is. It would not be safe to run a train backwards at all with passengers." Appellant also objected to each of the following questions propounded to W. W. Lathrop, a witness for appellee: "What is there, if anything, as to the weight of the engine affecting the safety of the train?" Answer: "It has. You take the locomotive engines, the standard engines they are using now, and these big engines are much heavier than the standard engines, the weight of them is far superior to the weight of a car. In striking any object it would have a tendency to throw it off the track, where otherwise it would go under." Also the following: "What tendency, if any, would it have to pulverize any object which was struck on the track?" Answer: "It would have more tendency to crush, the greater weight, of course." Also the following: "What would likely be the result of striking a horse, the cars being backed, the engine at the rear end of the train being run backward? What would probably be the result of striking a horse?" Answer: "My opinion would be, nine times out of ten you would knock the horse on the track, and you would run onto it. Derail the cars? Yes." These questions were objected

to and grounds of objection stated at the proper time and exceptions taken. It is insisted that this testimony was inadmissible because it "did not relate to any question of art, science, skill or trade, but was purely speculative and conjectural." In this claim, counsel are in error. Mr. Rogers, in his Expert Testimony, p. 236, §104, says: "An experienced railroad man, who has made a business of the running and management of railroads, is as fairly an expert as one skilled in any other art, and he may give testimony as an expert in questions of railroad management. The running and management of railways is so far an art, outside of the experience and knowledge of ordinary persons as to render the opinions of persons skilled therein admissible in evidence.". *Louisville, etc., R. Co.* v. *Frawley,* 110 Ind. 18. The witnesses referred to were experienced railroad men. No question was raised as to their qualifications to testify. They testified that it was much more dangerous to run a train of cars in front of an engine than with the engine in front of the cars. They gave their reasons for the opinion expressed. They expressed the opinion that a car coming in contact with a horse, the engine being in the rear of the train, is likely to knock it down on the track, where the cars will run over it, and in most instances result in the derailing of the cars; while if the animal is struck by the engine, it is likely to be thrown from the track, or by reason of the greater weight of the engine to be cut or pulverized so that the cars will pass over it without being derailed. The testimony was competent. *Cooper* v. *Central Railroad, etc.,* 44 Iowa 134; *Indiana, etc., R. Co.* v. *Hale,* 93 Ind. 79; *New York, etc., R. Co.* v. *Grand Rapids, etc., R. Co.,* 116 Ind. 60; *Louisville, etc., R. Co.* v. *Donnegan,* 111 Ind. 179. The reasons of the opinions entertained by these witnesses were competent; it was for the jury to determine their weight.

Appellant objected to certain questions propounded upon cross-examination to witnesses for and employes of appellant,—Eldridge, Miller, and O'Dell. The action of the

court is made as to each witness a reason for a new trial. The appellant objected to each of the following questions asked J. T. Eldridge, a witness for appellant, on his cross-examination: "You have frequently come down with the engine in front, have you not?" "Yes, I have seen them come down that way." "How frequently have you seen it done? How many times?" "I have seen it done several times years ago." Also each of the following questions asked Albert B. Miller, a witness for appellant, on his cross-examination: "Did you ever see that engine come backward from Coal Bluff down to Brazil?" Also the following: "You have seen that train come down from the east end of the switch with the engine in front, have you not?" The witness answered: "Yes." Also the following: "When they come from Coal Bluff to Brazil they put the engine in the rear, did they not?" The witness answered: "Yes." Also the following: "How did you get around it on that occasion? You say you never saw it come, backed down to Brazil?" The witness answered: "We pull the train down to run around on another track and then shove the trains out and come around on the other end and hitch on and then the engine would be ahead in coming to Brazil." Also the following: "Had there been any trouble about that?" Witness answered: "Not that I know of." Also each of the following questions asked G. B. O'Dell: "There has been no change in the tracks since the accident occurred?" "No change in the tracks." "Have you not seen the train made up that way frequently?" "Yes." It is urged that these questions were not proper unless they were limited to a time at and before the accident, and that they were without the issues in the cause; the question being whether the train at the time of the accident was being run under all the circumstances with care and skill, or in a negligent manner. It is further insisted that they were not proper cross-examination. The testimony in chief of these witnesses was calculated to leave upon the minds of the jury the impression that it was necessary to run the train from

the east end of the Caseyville branch of the appellant's road to Coal Bluff backwards, because there was no turntable out of Brazil on which the engine could be turned, and because the engine, if it came into Coal Bluff in front of the train could not be gotten in front as the train came from that point to Brazil. The evidence sought by the question objected to tended to show that it was not difficult to bring the train with the engine in front to Coal Bluff, and no difficulty at Coal Bluff in changing the engine so as to bring it to Brazil in front. Manifestly the purpose of placing the engine at the rear of the train at the east end of the Caseyville branch was to save the time at Coal Bluff, necessary to change the engine to the other end of the train before starting from that point for Brazil.

Over the objection of appellant, Henry Develin, a witness for appellant was permitted in rebuttal to answer the following questions: "You may tell the jury how frequently, if at all, you have seen stock on the railroad in the vicinity of this collision." The witness answered: "Just east of there. I don't recollect of seeing any just at that crossing where the wreck occurred, but somewhere between that place and where I got on at number eleven I saw stock frequently." The objection made was that plaintiff went into this subject in his examination in chief, and because it is not proper rebutting testimony, and because the question does not fix the time prior to the accident. Also the following: "You may tell if you know anything as to the train men seeing them." The witness answered: "My impression is they knew it." The court struck out the answer. The following was also propounded: "I want you to state to the jury where the miners' train was left after the miners were taken to their work in the mines?" Also the following: "Does the engine remain at the mines or does it leave?" "What trouble is there, if any, in hitching to the west end of the train at the east end of the switch?" The witness answered: "No trouble at all that I know of." The following: "If there is

any means there of changing the engine, or hitching it on the other end to pull the train down with the engine in front, state how that is done ?" The witness answered: "There were two switches there, one on either side of the main switch that goes to Caseyville; the length of the switches, I judge, is about a quarter of a mile." This answer was followed by the following question, to which no objection was made: "What means have they there of changing the engine in the proper way to come to Brazil ?" The witness answered: "They could cut loose at the main line and go on the side switch, get on the main line behind it and push it on the main line and be all right for Brazil." The following question was then propounded to the witness over appellant's objection: "How often have you seen that done ?" To which he answered: "Many times." We have not given the answer to each of the other questions, but they were all answered. It is claimed that none of them was proper in rebuttal, because appellee had gone into these subjects in the examination in chief of his witnesses. It is further claimed that they had no relevancy to the issue in the case. The admission of this testimony was not error. The witness, in substance, testified that there was no trouble in bringing trains down from the east end of the Caseyville branch with the engine in front, and that there was no trouble in changing the position of the engine at Coal Bluff so as to have it in front of the train in coming to Brazil; that he had seen it done "probably a hundred times." It was proper in rebuttal of the testimony of appellant as to the difficulty of so doing. Witness for appellant testified that the road was fenced, protected by proper cattle-guards, and that an order of the board of commissioners of Clay county prohibited stock from running at large. The legitimate purpose of this testimony was to show that danger was not to be apprehended from stock running at large. It was therefore proper for appellee to show that stock was frequently seen on the road.

The remaining reason for a new trial argued by counsel

for appellant is that the court erred in giving to the jury instructions numbered three and seven, respectively, asked by appellee. It is insisted that said instruction number three is contradictory to instruction number three and one-half, given at the request of appellant, and that it told the jury it was the duty of the appellant to carry appellee with absolute safety. *Nebeker* v. *Sullivan,* 99 Ind. 300, is cited, in which it is held that, when the instructions are contradictory and tend to mislead the jury, the judgment will be reversed. Instruction number three is in the following language: "A railroad company engaged in the business of transporting passengers is termed a common carrier of passengers, and where it receives a passenger on its train to be transported from one point to another for hire, its undertaking is to carry him safely to his destination." Instruction number three and one-half referred to, is as follows: "The rule of greatest possible care to be exercised by a railroad company for the safety of its passengers is not to be understood as requiring the utmost degree of care which the mind can attain to or is capable of inventing. It simply means the greatest degree of care that is consistent with the particular mode of transportation. So in this case if you find from the evidence that the train on which the plaintiff was riding was not a regular passenger train, but a miners' train composed of freight or box cars, and was run and operated at the time of the accident in the usual manner in which it had been run and operated for many years prior to the accident and that the train was operated in a manner not careless or negligent, and plaintiff was and had been familiar with the manner of running and operating such train, then I instruct you that the defendant was only required to use the highest degree of care consistent with the running and operation of this particular kind of a train, and if you find that it was so operated at the time of the accident then the defendant would not be liable to plaintiff in this action, because it had fully performed its duty in this

respect, and if while so being run and operated it came into collision with a horse which suddenly sprang upon the track in front of it, and the collision with the horse was unavoidable and the train was derailed and the plaintiff was injured by reason thereof, the defendant is not liable in this action and your verdict should be for the defendant."

Instruction number three, referred to, told the jury that a carrier undertakes to carry a passenger safely to his destination. This is the unquestioned duty of the carrier. In the performance of this duty, it must exercise the highest degree of practicable skill and care, as stated in instruction three and one-half. Construed together, and all the instructions under the universal rule must be so considered, they were not, in our opinion, misleading. The jury could not have inferred that it was the duty of appellant to carry appellee with absolute safety.

Instruction number four stated that: "Although a common carrier of passengers does not insure the safety of passengers, the law will not tolerate any negligence on the part of such carrier, and if it is guilty of any negligence resulting in the injury of such passenger, it is liable for such injury."

Instruction number seven stated: "If you find from the evidence in this cause that the defendant was guilty of negligence in running its train with the engine in the rear, if it did so run it, and that by reason of so running it the car in which the plaintiff was riding was derailed, by reason of coming in contact with an obstruction on the track, if it was so derailed, whereby plaintiff was injured in the manner described in the complaint, then it is no defense for the defendant to prove that such train so negligently run was operated as skilfully and carefully as a train run in that manner could be operated."

The first instruction, which is lengthy, stated the issues; the seventh informed the jury that if appellee was injured by reason of the negligence in running its train backwards

instead of forwards, then it would be no defense for the defendant to prove that the train thus run was operated as carefully as a train could be run in that manner. Crediting the jury with the average intelligence of jurors, the instructions given were not misleading. Considered together, they fairly state the law applicable to the evidence in the cause.

We find no error for which the judgment should be reversed. Judgment affirmed.