THE COMMISSIONERS OF LAKE FORK SPECIAL DRAINAGE DISTRICT

*v.*

THE PEOPLE *ex rel.* Edward C. Bodman.

*Filed at Springfield May 11, 1891.*

1. DRAINAGE LAW—*statute construed—connecting outside lands with district ditches—duty of commissioners.* Section 42 of the Farm Drainage act of 1885, after providing in the first clause that "owners of land outside the drainage district * * * may connect with the ditches of the district already made, by the payment of such amount as they would have been assessed if originally included in the district," provides in the second clause: "If individual owners outside the district have, or shall so connect, they shall be deemed to have voluntarily applied to be included in the district, and their lands benefited by such drainage shall be treated, classified and taxed like other lands within the district:" *Held,* that these two clauses, when construed together, are mandatory, so far as the action of the commissioners is concerned, and that the word "so," in the second clause, refers back to the connection with the ditches of the district referred to in the first clause, and such connection with the ditches of the district depends upon the payment of assessments.

2. Where outside owners "so" connect with the ditches of the district, it is the duty of the commissioners to treat such connection as a voluntary application to be included in the district, and to classify and tax the lands of such owners benefited by the drainage, the same as other lands in the district. The acts which the commissioners are thus required to perform concern the public interest, and the exercise of the power conferred upon them may be insisted upon as a duty.

3. SAME—*voluntary connection with district drains—previous finding of commissioners.* The fact that the commissioners of a district may have previously found that a party's lands did not require the drains of the district for an outlet, will not prevent the land owner from afterward voluntarily connecting his lands with such drains. When such connection is voluntarily made, it is an admission on the part of the owner that he needs such drains for an outlet, and the duties thereby imposed upon the commissioners do not depend upon their judgment whether such connection is required or not.

4. SAME—*outsider may connect with the drainage system.* An outside owner may make the connection with a drainage system of a district either by connecting his own ditches, if he has any, with those of the district, or by draining through the same in some other mode.

5. DRAINAGE COMMISSIONERS—*agreement not to tax lands connected with drains.* The rule is now well established that no agreement to do an act forbidden by the statute, or to omit to do an act enjoined by statute, is binding. So an agreement by commissioners of a drainage district with a land owner outside of the district not to tax or assess his lands without the district, in any event, notwithstanding he may voluntarily connect them with the drains of the district, is illegal and void, as being in contravention of the statute.

APPEAL from the Circuit Court of Piatt county; the Hon. JAMES F. HUGHES, Judge, presiding.

Mr. J. L. RAY, and Mr. H. CREA, for the appellant:

The statute is mandatory. *James* v. *Dexter,* 112 Ill. 489; *Kane* v. *Footh,* 70 id. 587; *Wheeler* v. *Chicago,* 24 id. 105; *Lawler* v. *Pirkins,* 77 id. 271.

The contract not to assess the lands of relator was void. *Penn* v. *Bornman,* 102 Ill. 523; 5 Robinson's Practice, 398, 530; 7 Wait's Actions and Defenses, 64; *Law* v. *People,* 87 Ill. 385; *Banking Co.* v. *Rautenberg,* 103 id. 460; Green's. Brice's Ultra Vires, 579.

Corporations can not make contracts that will disable them from performing their public duties. 1 Dillon on Mun Corp. secs. 97, 457, 458, 935, 968.

Mr. JAMES HICKS, and Messrs. JOHNS & RANDOLPH, for the appellee:

In order to take lands into a district upon petition two things must concur: First, such lands must be involved in the same system of drainage; and second, require for outlets. the drains of the district made or proposed to be made. (Hurd's Stat. 1889, p. 571, sec. 42.) And the finding of the commissioners as to the second of these jurisdictional requirements is conclusive. Hurd's Stat. 1889, p. 564, sec. 15; *People* v. *O'Hair,* 29 App. Ct. 241.

The doctrine of estoppel *in pais* applies to this corporation. *Logan County* v. *City of Lincoln,* 81 Ill. 156; *Railway Co.* v. *Joliet,* 79 id. 25; *Lee* v. *Mound Station,* 118 id. 305; *Martel*

v. *East St. Louis,* 94 id. 67; *Petersburg* v. *Mappin,* 14 id. 193; *Piatt County* v. *Goodell,* 97 id. 85; *Sexton* v. *Chicago,* 107 id. 323; *People* v. *Chicago,* 20 Bradw. 473; *Genoa* v. *Vanalstine,* 108 id. 552.

The resolution by which relator's lands are taken into the district asserts that he has either connected his ditches with the ditches of Lake Fork Special Drainage District, or that his lands have their drainage by and through the ditches of Lake Fork Special Drainage District. The only condition authorized by statute by which the commissioners are authorized, without petition, to annex land to the district, is where the owner of lands has connected his ditches with the ditches of the district, in which case he shall be deemed to have "voluntarily applied to be included in the district." Hurd's Stat. 1889, p. 571, sec. 42.

It being left to conjecture which one of the two states of affairs exists, the rule is, the doubt must be resolved against the corporation. 1 Dillon on Mun. Corp, secs. 55, 251; *Rawlings* v. *Cerro Gordo,* 32 App. Ct. 217.

It must somewhere affirmatively appear that the lands annexed have been, or will be, benefited by the drainage of the district. *Commissioners* v. *Kelsey,* 120 Ill. 485.

The special drainage district, as a corporation, has conferred upon it, in general terms, the power to make contracts. (Laws of 1885, p. 95, sec. 52; p. 78, sec. 1.) And to sue and be sued, plead and be impleaded. (*Vide, supra.*) And, therefore, to make all contracts which are necessary, usual, fit and proper to its corporate purposes, whether the power is conferred in express or general terms, or by implication, as incidental and necessary to execute special powers. 1 Dillon on Mun. Corp. sec. 443; *Galena* v. *Corwith,* 48 Ill. 424; *Coldwater* v. *Tucker,* 24 Am. Rep. 601; *Jones* v. *Richmond,* 98 Am. Dec. 695; *State Board* v. *Railway Co.* 17 Am. Rep. 702.

And further, when not restricted, expressly or by necessary implication, to make any contract a natural person may enter

into to promote its objects.    *Galena* v. *Corwith,* 48 Ill. 424;
*State Board* v. *Railway Co.* 17 Am. Rep. 702 ; *Abbey* v. *Bellups,*
72 Am. Dec. 143 ; *Blunt* v. *Walker,* 78 id. 709 ; *East St. Louis*
v. *Gas Light Co.* 98 Ill. 415.

If this contract is in excess of the powers of the corporation,
yet within its general scope, it is valid, because it is executed,
and not against public policy.    Sedgwick on Stat. and Const.
Law, (3d ed.) 72 ; *State Board* v. *Railway Co.* 17 Am. Rep.
702 ; *Pixley* v. *Railroad Co.* 91 Am. Dec. 623 ; *Farmers' Trust*
v. *Dhein,* 43 Wis. 426 ; *Zabriski* v. *Railroad Co.* 64 U. S. 381 ;
*Merritt* v. *Millard,* 4 Keyes, 208 ; *Parish* v. *Wheeler,* 22 N. Y.
503 ; *Bissell* v. *Railroad Co.* 22 id. 258 ; *Cary* v. *Railroad Co.*
29 Barb. 35 ; *Chapman* v. *M. R. and L. E.* 6 Ohio St. 137 ;
*Camden and A. R. Co.* v. *M. L. and E. H. Co.* 48 N. J. L. 530 ;
*Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62 ; *East St. Louis* v.
*Gas Light Co.* 98 Ill. 415 ; *De Groff* v. *Thread Co.* 21 N. Y.
128 ; *Bank* v. *Brooks,* 22 App. Ct. 238.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court :

This is an information in the nature of a *quo warranto,* filed
by leave in the Circuit Court of Piatt County by the State's
Attorney of that county in the name of the People on the re-
lation of Edward C. Bodman against the Commissioners of
the "Lake Fork Special Drainage District in the Counties of
Piatt, Champaign and Douglas and State of Illinois," a drain-
age district organized and enlarged under the Act of 1885,
known as the Farm Drainage Act, and entitled "An Act to
provide for drainage for agricultural and Sanitary purposes
and to repeal certain acts therein named," approved June 27,
1885, and in force July 1, 1885, giving the court to be in-
formed, etc., that, as to certain lands in Piatt County belong-
ing to the relator, the said commissioners have exceeded,
abused and misused the authority, power, privilege and fran-
chises conferred upon them by law, and that, as to said lands,

their franchises have become forfeited to the State, etc. The commissioners of the "Lake Fork Special Drainage District" aforesaid, being the defendant below, demurred to the information. The Circuit Court overruled the demurrer, and the defendant excepted. The defendant having elected to stand by the demurrer, the court entered judgment of ouster against the defendant, finding it guilty of exceeding, misusing, abusing, etc., its authority, power, franchises, etc., conferred by the laws of Illinois in, upon and over said lands, and ordering that the said defendant be ousted of its powers, franchises and privileges as to each of said tracts of land, etc. Such judgment of ouster is brought before us for review by the present appeal.

The information alleges that, on June 10, 1886, a petition was presented to the said commissioners by certain land owners, according to the provisions of Section 42 of said Act, praying that the areas of land described in the petition be attached to the district, and that the boundaries thereof be enlarged so as to take in said areas; that 1640 acres of land belonging to the relator, Bodman, were included in the areas of land, which the petition sought to have attached to the district; that, after hearing objections and evidence, the commissioners granted the prayer of the petition as to a large number of the tracts of land therein described, and said tracts were added to the areas of land in the district; that, among the lands so attached, were certain portions of relator's 1640 acres, towit: the N E ¼ of Section 30 in Township 17, etc., and the E ½ of section 31 in said Town., being about 480 acres; that, in the order attaching said lands, which was made on August 5, 1886, the commissioners adjudged as follows: "The commissioners further find that the remainder of the lands (including certain tracts belonging to Edward C. Bodman) described in said petition do not require for outlet the drains of the district made or proposed to be made;" that afterwards the commissioners proceeded to classify the lands.

so attached for special assessment of benefits, etc., and gave notice of the time and place for hearing objections thereto; that the relator appeared and objected to the classification of his lands that were so taken into the district, but the commissioners confirmed the classification and spread the same upon their records, and made and entered a special assessment tax list of said lands, which was also confirmed by them; that the relator was about to begin proceedings to have the aforesaid action of the commissioners quashed and set aside, and to have his 480 acres detached and restored to their original condition; that, thereupon, an agreement was entered into, on January 15, 1887, between said commissioners of the first part, and said Bodman of the second part, by the terms of which, after reciting the facts of the filing of the petition, of the hearing and order of August 5, 1886, of the making of the classification and assessment tax list, of the filing of the latter with the clerk of the commissioners and its certification by said clerk to the treasurer of the district, who was demanding the taxes assessed against Bodman's lands; and after further reciting his claim that said proceedings were all void, and his intention to begin proceedings to enjoin the collection of the taxes and vacate the order attaching his lands and classification thereof and the assessment of taxes against the same, and his information of the expressed intention of some of the land owners to make an effort to attach all of his lands, and his fear that, if the proceedings to attach the land already taken in were allowed to stand, an effort would be made to attach his other lands to the district, thereby involving him in expensive litigation; and after still further reciting, that said second party was willing to pay the taxes and assessments extended against his lands already attached, if said first party would enter into an agreement by which the balance of said Bodman's lands should be forever released from liability of becoming attached to said district, or of being made a part thereof, and from assessments and taxes on account of said

district; therefore, for the purpose of compromising and settling all such matters, said first party stipulated and agreed, that, if said second party should refrain from attacking the proceedings already had for taking in the lands already attached to the district, and the classification and taxation thereof, none of the balance of said second party's lands (that is to say, of said 1640 acres) should ever be attached or taken in as a part of the district, or become liable to assessments and taxes on account thereof, and said second party stipulated and agreed that he would refrain from questioning or attacking said proceedings or the classification and taxation of the lands already attached.

After setting out this agreement, the information then proceeds to state, that relator has since refrained from attacking the proceedings to attach, or the classification, or taxation of the lands attached, and has paid all taxes and assessments extended under the order of the commissioners against the lands so attached, but that, notwithstanding said order of August 5, 1886, and said agreement of January 15, 1887, the said commissioners on June 10, 1889, passed by unanimous vote, and entered of record, a resolution whereby, after reciting that certain owners of land outside of the district (giving the names of 15 owners and describing over 100 forty acre tracts, including the name of the relator and describing certain tracts opposite his name) "have connected their ditches with or have their drainage by and through the ditches of Lake Fork Special Drainage District," it is, "therefore, resolved that such land owners be deemed to have voluntarily applied to be included in said Lake Fork Special Drainage District, and that their lands above described benefited by such drainage be added to and made a part of said * * * District, and that they be classified and taxed like other lands within said district."

The information further states that, since the passage of said resolution, said commissioners have treated certain lands

of the relator (describing them) the same as other lands in the district, and have classified them, and confirmed the classification, after giving notice of time and place for objecting thereto, and entered the same upon the records, and have made and entered of record a special assessment tax list of said lands, and are about to proceed to collect taxes so levied upon the same for benefits accrued from ditches, made in said district and on said land, and have classified each tract of said lands for benefits accrued by reason of proposed enlargement, deepening and improvement of the Main Ditch constructed in said district, and made a special assessment tax list for such benefits and have confirmed and entered of record said special assessment, and have treated said tracts as if they were lawfully within the boundaries of the district.

The information as thus set out proceeds upon the ground, that the commissioners had no power to attach the lands in controversy to the district for two reasons : 1st, because they found, by the order of August 5, 1886, that the remainder of relator's lands not then attached did not require for outlet the drains of the district made or proposed to be made ; and, 2nd, because they made the contract of January 15, 1887, with the relator.    We do not think that either of these reasons was sufficient to justify the judgment of ouster entered by the court below.

*First,* as to the finding in August, 1886, that the lands not then attached did not require for outlet the drains of the district.    Said section 42 of the Farm Drainage Act, after providing in the first clause, that "owners of land outside the drainage district   *   *   *   may connect with the ditches of the district already made by the payment of such amount as they would have been assessed if originally included in the district," contains the following provision in the second clause : "If individual owners outside the district have or shall *so* connect, they shall be deemed to have voluntarily applied to be included in the ·district, and their lands benefited by such

drainage shall be treated, classified and taxed like other lands within the district."

It is manifest that these two clauses when construed together are mandatory, so far as the action of the commissioners is concerned. The word, "*so*," in the second clause refers back to the connection referred to in the first clause, and such connection with the ditches of the district depends upon the payment of assessments. When outside owners "*so*" connect with the ditches of the district, it is the duty of the commissioners to treat such connection as a voluntary application to be included in the district, and to classify and tax the lands of such owners benefited by the drainage the same as other lands in the district. The acts, which the commissioners are thus required to perform, concern the public interest, and the exercise of the power conferred upon them may be insisted upon as a duty. They would be doing an injustice to the owners in the district, if outsiders were allowed to make use of the drainage of the district without being taxed to pay for it. The imperative language of the second clause must be regarded as mandatory, because "the rights of the public *or of third persons* depend upon the exercise of the power, or the performance of the duty to which it refers." (*James* v. *Dexter*, 112 Ill. 489.)

The information sets out a resolution, by which the commissioners found that the relator had connected his ditches with the ditches of the district, or had his drainage by and through the ditches of the district. An outside owner may make the connection, which the statute speaks of, with the ditches of the district, either by connecting his own ditches, if he has them, with those of the district, or by draining through the ditches of the district in some other mode. The statute does not specify how the connection is to be made. If a man has no ditches, but yet in some way has his drainage, that is to say, drains his land, "by and through the ditches of the district," he thereby connects with the district ditches. How

can he drain *through* those ditches, unless his land is somehow connected with them? We regard either clause of the alternative sentence in the resolution as asserting a connection with the ditches of the district.

After setting out the resolution, the information contains no denial of what the resolution asserts. It is nowhere averred, that the relator did not connect his ditches with those of the district, or that he did not have his drainage by and through the ditches of the district. As every pleading must be construed most strongly against the pleader, the information must be construed as admitting that the relator did "connect" with the ditches of the district. This being so, it was the duty of the commissioners to treat him as a voluntary applicant to be included in the district, and to classify and tax his lands, benefited by the drainage, accordingly.

The resolution bears date June 10, 1889, and the fair presumption is that the connection was made about that date, or at any rate after August 5, 1886. It makes no difference, that, at the latter date, the commissioners found that the relator's remaining lands did not require the drains of the district for outlet, if, subsequently to that time, he voluntarily connected with the ditches of the district. Such connection on his part was an admission that he needed such drains for outlet. Where such connection is voluntarily made by the outside owner, the duty of the commissioners does not depend upon their judgment as to whether the lands so connected do, or do not, require for outlet the drains of the district.

We are, therefore, of the opinion that, under the averments of the information, the commissioners were not prevented from treating the lands in controversy as included in the district by reason of the order of August 5, 1886.

*Second,* as to the contract of January 15, 1887. It results from the views already expressed that this contract was illegal and void, and cannot be set up as an estoppel against the commissioners. It bound them not to perform a duty, which

the statute required them to perform.   The second clause of section 42 being mandatory, the commissioners were imperatively bound by the requirements of that clause to treat the relator's connection with the ditches of the district as a voluntary application to be included in it, and to classify and tax his lands like other lands within the district.   When they agreed that none of his remaining lands should ever be attached to the district, or classified, or taxed, whether he connected them with the ditches of the district or not, they agreed to violate a statutory duty.   "The rule is now well established that no agreement to do an act forbidden by statute, or *to omit to do an act enjoined by statute is binding."* (*Penn* v. *Bornman,* 102 Ill. 523, and cases there cited).

For the reasons here stated, we think that the demurrer to the information should have been sustained.   The judgment of the Circuit Court is accordingly reversed, and the cause is remanded to that court for further proceedings in accordance with the views here expressed.            *Judgment reversed.*