THE ILLINOIS CENTRAL RAILROAD COMPANY, Defendant in Error, *vs.* THE CHICAGO AND GREAT WESTERN RAILWAY COMPANY *et al.* Plaintiffs in Error.

*Opinion filed October 28, 1910—Rehearing denied Dec. 7, 1910.*

APPEALS AND ERRORS—*validity of a statute is never determined unless necessary.* In order to give the Supreme Court direct appellate jurisdiction upon the ground that the validity of a statute is involved such statute must be the foundation of some right asserted or some defense made, so that the determination of the validity of the statute is necessary to a decision of the case, and if the issues can fairly be decided without reference to the statute, its validity will not be determined.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. CHARLES N. GOODNOW, Judge, presiding.

JESSE LOWENHAUPT, for plaintiffs in error.

JOHN G. DRENNAN, (VERNON W. FOSTER, and W. S. HORTON, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

The Illinois Central Railroad Company brought an action of replevin in the municipal court of Chicago against the Chicago and Great Western Railway Company and N. Deutsch & Co. to recover the possession of one hundred brasses marked "Illinois Central," "I. C. R. R." or "I. C.," which were located in the freight yards of the Chicago and Great Western Railway Company in Chicago, in car C. G. W. 8690. The value of the goods claimed was $100. Upon a trial by the court without a jury there was a finding that the plaintiff below was entitled to the possession of all the brasses described except one which was not marked, and that brass was returned to Deutsch & Co. in open court. Judgment was entered upon this finding, awarding the pos-

session of the property described in the writ to the plaintiff below and assessing one cent damages against the defendants and the costs of suit. The defendants below have sued out a writ of error from this court to the municipal court to obtain a review of the judgment below.

To establish its right to the possession of the property described in the writ, defendant in error proved that for more than eight years last past it had purchased all of its brass journals from the Hewitt Manufacturing Company, and that during the same time it had sold all of its brasses which were not fit for re-filling or further service to the Hewitt company; that during said period the Hewitt Manufacturing Company caused to be stamped on the brasses manufactured for defendant in error the name or initials of the Illinois Central Railroad Company, and that such initials were not stamped on any brasses other than those manufactured for and delivered to the Illinois Central Railroad Company. It was also proven that none of the brasses so manufactured by the Hewitt company for the Illinois Central Railroad Company had ever been sold to any other person or had passed out of the possession of the Hewitt company to anyone other than defendant in error; that the brasses in question were also stamped with the name of the Hewitt Manufacturing Company, and were identified in court as being the brasses manufactured by that company for and delivered to the defendant in error. It was shown further that all worn out or unfit brasses on the various lines of the Illinois Central Railroad Company were shipped to Burnside and there loaded on cars and shipped to the Hewitt Manufacturing Company.

F. H. Smith, general manager of the Hewitt Manufacturing Company, testified that he had been employed by that company for sixteen years as general superintendent and district manager; that his company manufactured brass journals, commonly called "brasses," and had been manufacturing these brasses for the defendant in error

since 1893 and that these brasses are used exclusively for railroad purposes; that all of the brasses manufactured for defendant in error were specially marked either "Illinois Central" or "I. C. R. R.," together with the pattern number thereon and the name of the Hewitt Manufacturing Company; that brasses so marked never go to any other railroad company or person than the defendant in error. He testified that from the general appearance of the brasses in question they had been manufactured by his company and sold and delivered to defendant in error.

James S. Sheafe, mechanical inspector of the Illinois Central Railroad Company, testified that defendant in error purchased all of its brasses of the Hewitt Manufacturing Company and sold all its scrap brasses, when no longer fit for use, to said company; that when brasses are in such condition that they can be re-filled,—that is, not too thin to be re-filled,—they are re-filled by the defendant in error at its shops at Burnside, and when they are too thin to be re-filled or otherwise no longer useful they are sold to the Hewitt Manufacturing Company as scrap. He testified that passenger brasses "form 503" are used exclusively in the suburban service in Chicago; that such brasses are made exclusively for use on suburban cars of defendant in error, and that he never knew of one of these brasses being out of the limits of the suburban service; that among the brasses found in the possession of plaintiffs in error was one marked "Passenger 503."

The evidence shows that plaintiff in error the Chicago and Great Western Railway Company had no interest or claim in the brasses in question except that of a carrier for plaintiff in error Deutsch & Co., who had delivered the brasses to the Chicago and Great Western Railway Company to be shipped to St. Paul for the Great Northern Railroad Company. Nathan Deutsch testified on behalf of the defendant in error that he was president of N. Deutsch & Co. and had been ever since its incorporation. He admitted

that the brasses in question were hauled from the ware-houses of N. Deutsch & Co. and delivered to the Chicago and Great Western Railway Company, but he could not tell of whom he purchased the brasses nor how long they had been in the possession of his company. Several witnesses testified on behalf of plaintiffs in error as to the general course of business among smelters and dealers in metals, which testimony tended to show that railroad brasses were frequently bought and sold as scrap in much the same way that other scrap brass is dealt in.

We have thus set out the substance of the evidence, not because there is any question of fact presented for review, but for a different purpose, which will presently appear.

At the request of defendant in error the court below held that section 242 of the Criminal Code is a valid constitutional enactment, and refused to hold that said section was unconstitutional, at the request of plaintiffs in error.

The section of the statute above referred to and which was held to be constitutional by the trial court is as follows: "If any person shall purchase or receive for sale from any other person any link, pin, bearing, journal or other article of iron, brass or other metal which has been manufactured and is used exclusively for railroad purposes, and which shall have stamped thereon the name of some railroad company, or the initial letter thereof, without the consent in writing of the president, general manager or general superintendent of such railroad company, such person shall be fined in a sum not less than $100 nor more than $500, and be imprisoned not less than ten days nor more than ninety." It is the ruling of the court in holding this statute constitutional that is supposed to give this court jurisdiction of this case.

In our opinion the validity of the above statute is not involved in this suit. From the statement of the evidence before set out it appears that defendant in error based its right to recover on its claim that it had bought the brasses

in question from the Hewitt company, and that they had in some way come into the possession of Deutsch & Co. without the knowledge or consent of defendant in error. It is apparent that the case might well be disposed of without reference to the statute. The right of defendant in error to recover the possession of its property did not depend upon the validity of the statute in question. In order to give this court jurisdiction of a cause on the ground that the validity of a statute is involved, such statute must be the foundation of some right asserted or of some defense made, and the validity of the statute must necessarily be involved in the determination of the issue presented. Where the issues can fairly be determined without reference to the statute, the constitutionality of the statute cannot be said to be involved and this court is without jurisdiction. In *City of Cairo* v. *Bross,* 99 Ill. 521, this court held that the statute giving the Supreme Court jurisdiction, by direct appeal, where the validity of a statute was involved, was intended to apply only where the validity of a statute as originally passed is the primary inquiry. The rule is established by many authorities that the constitutionality of a statute will never be determined when the cause in which its determination is sought may be finally disposed of without such determination. *Smith* v. *Speed,* 50 Ala. 276; *Shehane* v. *Bailey,* 110 id. 308; *Skinner* v. *Hartford Bridge Co.* 29 Conn. 523; *Martin* v. *State,* 143 Ind. 545; 42 N. E. Rep. 911; *Upton* v. *Kennedy,* 36 Mich. 215.

The validity of a statute not being necessarily involved in this case this court is without jurisdiction, and the cause will be transferred to the Appellate Court for the First District.