(No. 27097.—Reversed and remanded.)
COMMISSIONERS OF DRAINAGE DISTRICT No. 5, Appellees, *vs.* WILLIAM ARNOLD, Appellant.

*Opinion filed September 21, 1943.*

JOHN H. BECKERS, and EDWARD R. NADELHOEFFER, for appellant.

KRUSEMARK & KRUSEMARK, for appellees.

Mr. CHIEF JUSTICE SMITH delivered the opinion of the court:

This is an appeal from an order and judgment of the circuit court of Will county. Appellees, as drainage commissioners of Drainage District No. 5 of Monee, filed a petition in the county court of that county in which it was alleged that the drainage district was organized under the act of 1885, commonly known as the Farm Drainage Act, (Ill. Rev. Stat. 1941, chap. 42, par. 82 *et seq.*,) that the commissioners of the drainage district were of the opinion that there were certain lands lying outside the district which were benefited by the original work, and by work to be done, in said district; that there are "certain land owners outside of said Drainage District No. 5 of

Monee, Will County, Illinois, who have connected their ditch, or ditches, or tile drains, upon their said lands, with the open ditch of said District, already made and constructed, as hereinbefore mentioned, and therefore, they should be deemed to have voluntarily applied to be included in said District, * * *."

The land described in the original petition was the south half of the southeast quarter of section 22. This land was alleged to be owned by appellant, William Arnold. The petition further alleged, "That the aforesaid tract of land is drained by and through a tile drain existing upon the said land, there constructed by the said William Arnold, or his agents or servants, and connecting with another drain ultimately leading into the open ditch of said District."

The prayer of the petition was that, upon a hearing, the court would find that the lands described in the petition should be deemed to have been benefited and will be benefited by the work done and to be done in said district; that the owners of said lands be deemed to have voluntarily applied to be included in said district, and that said lands be treated, classified and taxed like other lands within the district. An answer to the petition was filed. Thereafter the petitioner filed an amendment to the petition. The amendment added the north half of the southeast quarter of section 22 to the lands described in the petition. It was alleged in the amendment that this land was also owned by William Arnold; that "the aforesaid tract of land is drained by and through a tile line or lines constructed by the said William Arnold, his agents or servants, which said tile line runs in a Northeasterly direction, and empties into the South side of the public highway running East and West, thence through a culvert Northerly into a tile line located upon the land of Milton Harmening, being the Southeast Quarter, (S. E. ¼) of Section Fifteen (15), which said tile line then runs in a Northeasterly direction, connecting with the ditch of said District."

Upon a hearing the county court granted the prayer of the amended petition. It was ordered and adjudged that the lands were benefited by the work done in the district; that appellant was deemed to have voluntarily applied to have said lands included within the district, and they were ordered annexed to the district, to be treated, classified and taxed as other lands in the district.

Thereafter appellant presented an appeal bond to the county court. It was recited in the bond that an appeal from the judgment of the county court had been taken to the circuit court of Will county. The bond was approved by the court.

After the cause was filed in the circuit court, a motion was made by appellees to strike the appeal bond and dismiss the suit. The ground set out in this motion was the insufficiency of the appeal bond. Thereafter appellees filed a supplemental motion to strike the appeal bond and dismiss the suit. This supplemental motion also alleged the insufficiency of the appeal bond and the conditions thereof. It further alleged that section 42 of the Farm Drainage Act was unconstitutional and that no appeal would lie from the judgment of the county court to the circuit court.

The circuit court, upon a hearing of the motions found that that part of the amendment of 1919, to section 42 of the Farm Drainage Act, purporting to allow an appeal from the county court to the circuit court, was invalid, for the reason that it amended another statute without setting out the amended statute at length in the amendment, as required by section 13 of article IV of the constitution. That court entered an order dismissing the appeal. This order was entered on May 26, 1942. On June 18, 1942, appellant filed a motion to vacate and set aside the order of May 26, dismissing the appeal. It was alleged in this motion that the entire amendment of 1919 to section 42 of the Farm Drainage Act was unconstitutional and that the

county court had no jurisdiction of the proceedings from which the appeal was taken. An order was entered on the same date, striking the cause from the docket, with leave to reinstate, on motion of either party. On December 15, 1942, on motion of appellant, the cause was reinstated. The motion of appellant to vacate the judgment entered on May 26, 1942, was heard and denied.

On December 16, 1942, appellant filed a notice of appeal. This notice of appeal is from the order of the court denying appellant's motion to vacate the judgment entered on May 26 dismissing the appeal.

Appellees have filed a motion in this court to dismiss the appeal on the ground that the notice of appeal was not filed within ninety days from May 26, 1942, the date on which the judgment of the circuit court, dismissing the appeal, was entered, and on the further ground that appellant filed no praecipe for the record on appeal, as required by rule 36(1). This motion was taken with the case.

Each party is, by the record in this case, placed in the anomalous position of both asserting and denying the validity of the 1919 amendment to section 42 of the Farm Drainage Act. Appellees, in an attempt to sustain the judgment of the circuit court, dismissing the appeal, challenge the validity of that portion of said amendment purporting to authorize an appeal from the judgment of the county court to the circuit court. In opposition to appellant's motion to vacate the judgment, appellees assert the validity of that portion of the 1919 amendment conferring jurisdiction on the county court.

On the other hand, appellant, in seeking to reverse the judgment of the circuit court, dismissing the appeal, avers that the 1919 amendment is valid and that such appeals are authorized. In support of his motion to vacate that judgment, however, he asserts that if the provisions of the 1919 amendment authorizing an appeal from the county court to the circuit court are invalid, this invalidates the

entire amendment, and the county court was wholly without jurisdiction.

It is true that the notice of appeal was only from the order of the court denying appellant's motion to vacate the judgment entered on May 26, 1942, dismissing the appeal. Nevertheless, the motion to vacate raised the constitutionality of the entire amendment of 1919 to section 42 of the Farm Drainage Act. It challenged the jurisdiction of the subject matter of both the circuit court and the county court. We are disposed to treat the notice of appeal as sufficient to present for review the validity of the 1919 amendment to section 42 of the Farm Drainage Act, and to properly present the questions raised, both under the judgment entered on May 26, 1942, and the order denying the motion to vacate that judgment. Section 76(2) of the Civil Practice Act provides that an appeal shall be deemed perfected when the notice of appeal is filed and that no other step shall be jurisdictional. (Ill. Rev. Stat. 1941, chap. 110, par. 200.) The failure to file a praecipe for the record is not grounds for dismissing the appeal. The motion to dismiss the appeal will, therefore, be denied.

Prior to the 1919 amendment, section 42 of the Farm Drainage Act read as follows: "Nothing in this act shall be construed to forbid land owners within the district to more completely drain their lands by using the common drains as outlets to lateral drains; and the owners of lands outside the drainage districts or another drainage district may connect with the ditches of the district already made, by the payment of such amount as they would have been assessed if originally included in the district, or if such connection shall, by increase of water, require an enlargement of the district ditches, then the outside owners of land so connecting or other drainage district, as may be, shall pay the costs of such enlargement. If individual land owners outside the district shall so connect, they shall be deemed to have voluntarily applied to be included in the

district, and their lands benefited by such drainage, shall be treated, classified and taxed like other lands within the district. Drainage commissioners may at any time enlarge the boundaries of their districts by attaching new areas of land which are involved in the same system of drainage and require for outlets the drains of the district made or proposed to be made, as the case may be, upon petition of as great a proportion of the land owners of the area to be added as is required for an original district. All changes thus made in the district shall be duly noted and shown upon the map, and recorded in the drainage record. The commissioners shall proceed to classify the lands thus added to the district, and such lands shall be classified and assessed or taxed with their fair proportion of the costs of the work done, or to be done, in like manner, and upon the same basis as it would have been made had the new area been included in the district at its organization." Ill. Rev. Stat. 1917, chap. 42, par. 117.

It will be noted that this section, as it then existed, provided that lands lying outside a drainage district could be annexed to the district by two methods. First, by the voluntary act of the owners of such lands in connecting with the ditches of the drainage district, and payment of the amount such lands would have been assessed had they been originally included within the district. In that event, the lands became liable to assessment the same as if they had been originally included in the district. It was further provided that by connecting the ditches draining their lands to the district ditches, the owners should be deemed to have voluntarily applied to have their lands included in the district.

The second method provided by that section, for the annexation of lands to a drainage district, was on petition of a certain proportion of the owners of such lands. In order to pursue either of those methods the only proceed-

ing required was the action of the drainage commissioners, to be entered upon their records. No hearings or proceedings were provided for, or to be had, in any court, or otherwise, except before the commissioners. Under the statute, as it then existed, the decision of the commissioners was final. No right of appeal was given by the statute. The only method by which the legality of the action of the commissioners could be challenged was by *quo warranto. Shanley* v. *People ex rel. Goedtner,* 225 Ill. 579; *Scott* v. *People ex rel. Lewis,* 120 Ill. 129.

The 1919 amendment struck out' the last sentence of the section as it existed prior to the amendment, and added the following language:

"If, after the organization of any drainage district the commissioners thereof shall be of the opinion that there are lands lying outside of such drainage district, as organized, which are or will be benefited by the work done in said drainage district, or by work ordered to be done therein, such lands, in case they are not included in any other drainage district, shall be deemed to have made voluntary application to be included in said drainage district, by the work of which they are or will be benefited; and thereupon the commissioners shall prepare a petition setting forth a description of such lands or land benefited, giving the name of the owner or owners thereof, if known, and the postoffice address of such owner,' together with a general description of the drain or ditch, if any, making connection with the ditches of such' district; such petition shall be filed in the County Court of the county where such district was organized. The court shall fix a day when the court will hear such petition and thereupon the commissioners shall give ten days' notice thereof, which notice shall embrace a copy of the petition and service thereof shall be by delivering a copy thereof to each owner named therein, or by publishing a copy thereof in some

newspaper in the county where said lands, or the greater part thereof lie, or by posting ten copies thereof in ten of the most public places in or near the land sought to be annexed to the drainage district, the certificate of the publisher or the affidavit of the person delivering or posting such notices shall be evidence thereof. At the time fixed, or at a time continued from such time fixed, the court shall hear said cause, and if judgment is rendered in favor of petitioners, a copy of the petition, and proof of service thereof, together with order of judgment thereon, shall be delivered to the clerk of the drainage district, who shall file and record the same in the drainage record, and upon entry of such judgment the lands described in the said petition shall be deemed a part of the district and subject to all provisions of this Act. Every land owner whose land is thus annexed to any drainage district shall have a right to appeal from the order of the County Court annexing said land to the said drainage district, to the Circuit Court of the said county, upon filing a bond in a sum to be fixed by the judge of the County Court, the said appeal to be prayed within ten (10) days after the order has been entered by the court annexing the said land to the said drainage district. Land annexed to a drainage district under any of the provisions of this section shall be classified and assessed with the other lands therein, unless such classification shall have already been made, in which event the lands so annexed to the district shall be classified proportionately to such established classification with like proceedings in reference to assessment and right of appeal." Ill. Rev. Stat. 1941, chap. 42, par. 126.

This amendment created a third method by which lands lying outside the district could be annexed. Upon petition of the commissioners, filed in the county court, that court was given jurisdiction to determine whether the land sought to be annexed was or will be benefited by the work done or to be done in the district. If the court found that such

lands would be benefited, then the owners were to be deemed to have made voluntary application to have such lands included in the district. This is the first provision in the Farm Drainage Act purporting to authorize lands, lying outside the district, to be annexed to the district, except upon petition of the owners, where such owners had not connected their lands with the ditches of the district. The amendment also provided for an appeal from the order entered by the county court, on such petition, to the circuit court. It is this provision for appeal on which appellees' attack on the validity of the amendment is based.

It is alleged that the effect of this provision for an appeal, from the county court to the circuit court, is to amend section 1 of the act giving circuit and superior courts concurrent jurisdiction with county courts in drainage matters, (Ill. Rev. Stat. 1941, chap. 37, par. 158,) without setting out at length the act amended in the amendment, as required by section 13 of article IV of the constitution. It is further contended that the title of the amended act is not broad enough to include the subject of such appeals.

We find it unnecessary to consider any of the constitutional questions presented. It is settled that this court will not pass on constitutional questions if the case can be decided without doing so. *People* v. *Chiafreddo,* 381 Ill. 214; *People ex rel. Novotny* v. *Jarecki,* 372 Ill. 208; *People* v. *Adams,* 351 Ill. 79; *McEniry* v. *Tri-City Railway Co.* 254 Ill. 99; *Illinois Central Railroad Co.* v. *Chicago and Great Western Railway Co.* 246 Ill. 620.

As already observed, section 42 of the Farm Drainage Act, prior to the 1919 amendment, provided two methods by which lands lying outside of a drainage district could be annexed to and become a part of the district. First, where the owners had connected artificial ditches draining their lands with the ditches of the district, and second, upon petition of a certain proportion of the owners of such

lands. Neither of these methods required any court proceedings. The jurisdiction in both cases was committed solely to the drainage commissioners. The courts were given no jurisdiction in such matters. These provisions were unchanged by the 1919 amendment.

The amendment provided a third method whereby lands lying outside the district could be annexed, where the owners had neither connected their drains to the ditches of the district, nor petitioned to have their lands annexed. This method provided a proceeding to be initiated by the commissioners. The county court was given jurisdiction, on petition of the commissioners, to determine the questions involved, and whether the conditions exist which would authorize the annexation of the lands to the district, under the amendment.

The original petition filed in this cause described the south half of the southeast quarter of section 22. It alleged that said tract of land was drained by and through a tile drain existing upon said land, which had been constructed by the owner thereof and which connected with another drain "ultimately leading into the open ditch of said district." The amendment to the petition described the north half of the southeast quarter of section 22. As to that land, it was alleged that it was drained through a tile constructed by the owner, which emptied on the south side of the public highway, thence through a culvert into a tile located on the land of another, which tile connected with a ditch of the district.

Clearly, both the petition and the amendment alleged facts which brought the lands involved within the provisions of section 42 as it existed prior to the amendment. The facts alleged are that the lands are benefited; that the owners had connected such lands with the ditches of the district, and that the owners should be deemed to have voluntarily applied to have such lands included in the dis-

trict. This being true, the sole authority for determining whether such lands should be annexed to the district was lodged in the commissioners. (*Shanley* v. *People ex rel. Goedtner,* 225 Ill. 579; *Bodman* v. *Lake Fork Drainage Dist.* 132 Ill. 439; *Scott* v. *People ex rel. Lewis,* 120 Ill. 129.) It was not that character of case of which the county court was given jurisdiction by the amendment. It was a case not falling within the amendment at all, but clearly within the terms of the section as originally enacted. The allegations of both the petition and its amendment are, in substance, that the owner of the lands involved had connected such lands with the ditches of the district, as that language in the act has been construed by this court.

An outside owner may make the connection, which the statute speaks of, with the ditches of the district, either by connecting his own ditches, if he has them, with those of the district, or by draining through the ditches of the district in some other mode. The statute does not specify how the connection is to be made. If a man has no ditches, but yet in some way has his drainage, that is to say, drains his land, "by and through the ditches of the district," he thereby connects with the district ditches. *Comrs. of Lake Fork Special Drainage Dist.* v. *People ex rel. Bodman,* 138 Ill. 87; *People ex rel. Baron* v. *Drainage Dist. No. 3,* 155 Ill. 45.

To constitute a connection within the meaning of the statute it is not required that each land owner should dig a ditch from his land to the ditches in the district. If an owner of land adjoining the district makes a ditch leading from his land to and draining the water therefrom into the district ditch, and other land owners construct ditches on their lands connecting therewith so as to form a continuous line though which the waters from the said lands are drained into the district ditches, this is a connection within the meaning of the statute. *Gar Creek*

*Drainage Dist.* v. *Wagner,* 256 Ill. 338; *People ex rel. Wilcox* v. *Barber,* 265 Ill. 316. Similar language found in section 58a of the Levee Act (Ill. Rev. Stat. 1941, chap. 42, par. 57,) has been construed in the same way. *Inlet Swamp Drainage Dist.* v. *Cooper,* 274 Ill. 77.

It is clear that both the petition and the amendment thereto presented a case in which it was alleged that the owner of the lands involved had constructed artificial ditches or tiles which were connected with the drainage ditches or which lead to other ditches theretofore artificially connected with the drainage ditches. That being true, section 42, both before and after the 1919 amendment, vested in the commissioners the sole jurisdiction to determine whether such lands had been connected to the ditches of the drainage district; whether said lands were, or would be, benefited by the work done, or to be done, and whether the lands should be included in the district.

Inasmuch as both the petition and the amendment thereto presented a case solely within the jurisdiction of the commissioners, and not within the jurisdiction of the county court under the amendment, the proceedings were a nullity, and no question as to the validity of the amendment is in any sense involved. The only jurisdiction in the county court or in the circuit court on appeal was to dismiss the suit for want of jurisdiction. (*Welton* v. *Hamilton,* 344 Ill. 82.) The circuit court should, therefore, have dismissed the suit for want of jurisdiction, and not the appeal.

The judgment of the circuit court of Will county is reversed and the cause is remanded with directions to vacate the judgment entered on May 26, 1942, and to enter an order dismissing the proceeding for want of jurisdiction.

*Reversed and remanded, with directions.*