(No. 48729.— )

THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, Appellee, v. RICHARD H. BRICELAND, Indiv. and as Director of the Environmental Protection Agency, *et al.*, Appellants.

*Opinion filed Dec. 3, 1976.—Rehearing denied Jan. 28, 1977.*

Thomas F. Londrigan, of Londrigan & Potter, of Springfield, for appellants.

William J. Scott, Attorney General, of Springfield (Herbert Lee Caplan, Assistant Attorney General, of Chicago, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

This appeal involves an action for declaratory judgment and injunctive relief instituted by plaintiff, William J. Scott, as Attorney General of the State of Illinois. The defendants are the Illinois Environmental Protection Agency (EPA), Richard H. Briceland, as director of the Agency, and Jeffrey R. Diver, as deputy director of the Agency. The complaint also names Richard H. Briceland and Jeffrey R. Diver as defendants in their individual capacities.

The principal question at issue is whether the Attorney General is the only State officer authorized by the Illinois Constitution to institute and prosecute cases before

the Pollution Control Board. The Attorney General filed a two-count complaint in the circuit court of Sangamon County alleging that the EPA, through Deputy Director Diver, had filed five separate enforcement complaints before the Illinois Pollution Control Board. The complaint sought a declaratory judgment that the Attorney General is the only attorney empowered to institute and prosecute such actions on behalf of the State and also sought to enjoin the EPA from instituting and prosecuting enforcement actions and proceedings before the Pollution Control Board. The Attorney General later amended the complaint to add a third count which prayed that defendants Briceland and Diver be held personally liable for all sums expended by the EPA to prosecute enforcement actions before the Pollution Control Board.

The defendants denied that the EPA was without legal authority to prosecute enforcement actions and other proceedings before the Board. Defendants also filed a counterclaim. Count II of the counterclaim sought a declaration that the EPA and the individual defendants had the right to employ legal counsel, other than the Attorney General, to represent them in the present action. Cross motions for summary judgment were filed, and defendants filed a motion to dismiss count III of the Attorney General's complaint.

Upon a determination that section 4(e) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1004(e)) is unconstitutional, the trial court granted the Attorney General's motion for summary judgment and entered a permanent injunction restraining the defendants from instituting and prosecuting enforcement actions before the Pollution Control Board. The circuit court also granted the motion to dismiss defendants Briceland and Diver in their individual capacities, and entered a declaratory judgment that the defendants were entitled to legal representation in this action. The EPA has appealed from the finding of unconstitutionality and the

order entering a permanent injunction. The Attorney General has taken a cross-appeal from that part of the trial court's order which dismissed count III of the amended complaint and which allowed judgment on the pleadings as to count II of the counterclaim. A direct appeal has been taken to this court pursuant to our Rule 302(a)(1). (58 Ill. 2d R. 302(a)(1).) We affirm the decision of the circuit court in all respects.

Several issues are presented for resolution. Initially, it must be determined whether the applicable provisions of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1001 *et seq.*) authorize the EPA to institute and prosecute enforcement proceedings before the Board. If that issue is resolved in favor of the EPA, it must then be determined whether a delegation of prosecutorial authority to that agency violates the Attorney General provision of the Illinois Constitution. (Ill. Const. 1970, art. V, sec. 15.) These issues present questions of law involving the proper interpretation of the statutory and constitutional provisions involved. No dispute exists concerning any facts relevant to a resolution of this controversy.

The circuit court held that the Environmental Protection Act delegates to the EPA the authority to prosecute enforcement cases before the Pollution Control Board. It is well established that a court will not pass upon a constitutional dispute where the case may be disposed of upon other grounds. (See, *e.g., Commissioners of Drainage District No. 5 v. Arnold* (1943), 383 Ill. 498, 507.) We, therefore, must first consider the trial court's holding as to the meaning of the Environmental Protection Act.

Section 4(e) of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1004(e)) provides:

> "The Agency shall have the duty to investigate violations of this Act ***, to prepare and present enforcement cases before the Board, and to take such summary enforcement action as is provided for by Section 34 of this Act."

The Attorney General contends that the phrase "prepare and present enforcement cases before the Board" merely allows the EPA to gather and marshal the facts necessary for a presentation to the Board. The Attorney General suggests that by adopting this construction of the statute it will not be necessary for us to consider the constitutional question. The trial court held that the plain meaning of section 4(e) was that the EPA was directed to initiate and prosecute proceedings before the Board. We agree with that holding.

When read in conjunction with the other provisions of the Environmental Protection Act, it is clear that section 4(e) authorizes the EPA to prosecute proceedings before the Board. Title VIII of the Act (Ill. Rev. Stat. 1975, ch. 111½, pars. 1030 through 1034) is addressed to the enforcement procedure. Section 30 requires the EPA to investigate violations of the Act. Section 31(a) provides:

> "If such investigation discloses that a violation may exist, the Agency shall issue and serve upon the person complained against a written notice, together with a formal complaint, *** and shall require the person so complained against to answer the charges of such formal complaint at a hearing before the Board ***." (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(a).)

Section 31(c) states: "In hearings before the Board under this Title the burden shall be on the Agency or other complainant to show either that the respondent has caused or threatened to cause air or water pollution ***." Section 31 thus places the responsibility to institute and prove violations of the Act upon the EPA, and demonstrates that the Act contemplates prosecution at the administrative level to be conducted by the EPA.

This conclusion is buttressed by those sections of the Act which delineate the role of the Attorney General. Section 42 (Ill. Rev. Stat. 1975, ch. 111½, par. 1042) provides for the imposition of civil penalties for violations of the Act which are to be recovered in actions brought by the Attorney General or the State's Attorney of the

county in which the violation occurred. Similarly, section 43 (Ill. Rev. Stat. 1975, ch. 111½, par. 1043) allows the Attorney General to institute actions for injunctive relief in certain cases, and section 44 (Ill. Rev. Stat. 1975, ch. 111½, par. 1044) directs that the Attorney General, or the local State's Attorney, shall enforce the criminal penalties of the Act. The Attorney General is also given the sole authority to bring actions for *mandamus,* injunction or other appropriate relief against public bodies under the terms of section 46. Ill. Rev. Stat. 1975, ch. 111½, par. 1046(a).

It is evident from a full reading of the Environmental Protection Act that the General Assembly delegated the authority to prosecute cases before the Pollution Control Board to the EPA. The Act does impose enforcement responsibilities upon the Attorney General, but not at the administrative level. We, therefore, conclude that the trial court was correct in holding that section 4(e) directs the EPA to institute and prosecute enforcement cases before the Pollution Control Board. We next consider the constitutionality of this statutory directive.

Article V, section 15, of the Illinois Constitution of 1970 simply provides:

> "The Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law."

The Attorney General provision of the 1970 Constitution added to the language of the prior constitutional provision which created the office of Attorney General and provided only that he "shall perform such duties as may be prescribed by law" (Ill. Const. 1870, art. V, sec. 1). In *Fergus v. Russel* (1915), 270 Ill. 304, the court held that, under the 1870 Constitution, the Attorney General was the only officer empowered to represent the State in any suit or proceeding in which the State is the real party in interest.

The Attorney General contends that the holding of

*Fergus* was expressly ratified by the delegates to the Sixth Illinois Constitutional Convention and that the decision has been embodied in the Attorney General provision of the Constitution of 1970. The EPA contends that section 4(e) is a valid legislative enactment even if *Fergus* is held to be controlling. Alternatively, the EPA submits that this court has the authority to reexamine and reject the *Fergus* doctrine, and that we should now do so.

Before considering the proceedings of the constitutional convention of 1970, a short review of *Fergus* and the line of cases generated by it will be helpful. *Fergus* involved, among other issues, challenges to three appropriations to State boards and commissions. In each case the appropriation was for legal expenses relating to prosecutions of violations of State law. The appropriation to the Insurance Superintendent was: "For legal services, $4000 per annum; for expenses of prosecutions of violations of the insurance laws, $15,000 per annum; *** for traveling expenses of attorneys, court costs ***, $2000 per annum." (270 Ill. 304, 333.) Appropriations were also made to the Rivers and Lakes Commission, "For prosecutions, $2500 per annum," and to the State Board of Pharmacy, "For investigating and prosecuting illegal sale of narcotic drugs, $3000 per annum." (270 Ill. 304, 333.) Only the appropriations to the Insurance Superintendent "for legal services" and for "traveling expenses of attorneys and court costs" were declared invalid by the court. 270 Ill. 304, 342-43.

The rationale of the *Fergus* decision is that the 1870 Constitution granted the Attorney General all the powers associated with that office at common law, and that, while the legislature could add to these powers, the legislature could not reduce the Attorney General's common law authority. This principle was expressed by the court as follows:

"By our constitution we created this office by the common law designation of Attorney General and

thus impressed it with all its common law powers and duties. As the office of Attorney General is the only office at common law which is thus created by our constitution the Attorney General is the chief law officer of the State, and the only officer empowered to represent the people in any suit or proceeding in which the State is the real party in interest, except where the constitution or a constitutional statute may provide otherwise. With this exception, only, he is the sole official adviser of the executive officers and of all boards, commissions and departments of the State government, and it is his duty to conduct the law business of the State, both in and out of the courts." (270 Ill. 304, 342.)

The actual holding of *Fergus,* however, is far narrower than the final sentence of the above quotation might indicate, as is demonstrated by the following language of that case:

"The appropriation to the Insurance Superintendent for legal services and for traveling expenses of attorneys and court costs in prosecutions for violations of insurance laws is unconstitutional and void. The appropriation of $15,000 for expenses of prosecutions of violations of the insurance laws is not one necessarily for the purpose of paying the salaries or fees of attorneys for legal services in the prosecution of any suit or proceeding, but may be for the purpose of conducting investigations in. connection with the prosecutions of violations of the insurance laws and meeting various items of expense that might properly be incurred on the part of the Insurance Superintendent in preparing to institute prosecutions. *** This item of $15,000 for expenses of prosecutions of violations of the insurance laws is made for a proper purpose and is valid. The same

reasoning applies to the appropriation of $2500 to the Rivers and Lakes Commission for prosecutions and $3000 per annum to the State Board of Pharmacy for investigation and prosecution of the illegal sale of narcotic drugs. *These appropriations would each of them be invalid if they were made for the purpose of employing attorneys to prosecute violations of such laws,* but they are not so expressly made, and, so far as the language employed in expressing the purpose for which the appropriations are made is concerned, the purpose is a proper one and the appropriations are valid." (Emphasis added.) (270 Ill. 304, 342-43.)

Thus, stripped of *dictum,* the *Fergus* decision stands for the principle that the Attorney General is the sole officer who may conduct litigation in which the People of the State are the real party in interest.

The *Fergus* decision has been the subject of criticism (see DeLong, *Powers and Duties of the State Attorney General in Criminal Prosecution,* 25 J. Crim. L. 358, 368 (1935); D. Braden and R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 253-60 (1969)), but has never been overruled, and has been repeatedly cited with approval. (See, *e.g., Stein v. Howlett* (1972), 52 Ill. 2d 570, 586; *Department of Mental Health v. Coty* (1967), 38 Ill. 2d 602, 606; *People ex rel. Barrett v. Finnegan* (1941), 378 Ill. 387, 393.) It is beyond question that *Fergus* remained valid law at the time of the adoption of the present constitution. We turn next to a consideration of the Attorney General's contention that the *Fergus* decision was incorporated into the Attorney General provision of the 1970 Constitution.

Several arguments support the Attorney General's theory that the *Fergus* doctrine was accepted by the 1970 constitutional convention. When construing a constitutional provision, an important object of inquiry is the understanding of the voters who adopted the document.

(*Wolfson v. Avery* (1955), 6 Ill. 2d 78, 88; *Burke v. Snively* (1904), 208 Ill. 328, 344; *Board of Education v. Bakalis* (1973), 54 Ill. 2d 448, 476-77 (concurring opinion); *Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 467.) The official explanation which accompanied the proposed 1970 Constitution, and which was distributed to the voters throughout the State, said in regard to article V, section 15: "This section means that the Attorney General is the legal officer of the State. It makes no change in his current position." (7 Sixth Illinois Constitutional Convention, Record of Proceedings 2711 (hereinafter cited as Proceedings).) The official explanation thus indicates that no departure from the prior decisions of this court interpreting the Attorney General's duties was intended.

Prior to adoption of the 1970 Constitution it was pointed out to the constitutional convention that the way to abrogate the *Fergus* decision was to change the language of the 1870 constitutional provision:

"[I] t would seem appropriate, and, it is to be hoped, not too controversial, to do something about the *Fergus v. Russel* determination concerning the Attorney General. There is a simple drafting change that will introduce adequate flexibility in allocating legal work within the Executive Department. The change is to use the words of the 1818 Schedule—'whose duties may be regulated by law'—in place of 'perform such duties as may be prescribed by law.' " D. Braden and R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 260 (1969).

As previously mentioned, no change was made in the crucial language discussed above. It is also clear that the drafting change suggested by Professor Cohn and Mr. Braden was considered by the Committee on the Executive.

"MR. TOMEI: Delegate Young, as you alluded to, we have had some discussion about the duties of the attorney general which were prompted on my part by an examination, first of all, of Braden and Cohn in their

questioning of the extent to which these common law duties, so called, actually applied and, in fact, in terms of what the common law duties might be defined as.

Did the committee take into account this particular discussion by Braden and Cohn which I believe—at pages 256 and 259 of that volume—

MR. YOUNG: Yes, we did. We examined Braden and Cohn as a matter of fact on almost all the questions that they covered in regard to our committee. I can't say that we got out and read, all of us, *Fergus v. Russell*, but—I did, at least portions of it—and we did consider the problem." (3 Proceedings 1313.)

The failure of the delegates to act upon the suggested drafting change is an additional indication that the principle of *Fergus* was to have continuing vitality under the 1970 Constitution. A fuller examination of the constitutional debates concerning the Attorney General provision gives further support to this conclusion.

Delegate Young, of the Committee on the Executive, presented section 15 of the executive article to the convention with the following explanation.

"MR. YOUNG: ***
***

The present constitution, as I said, has nothing specific about the duties of the attorney general other than at the end of section 1 of article V which, after listing the members of the Executive Department, says, 'and shall perform such duties as may be prescribed by law.'

The duties of the attorney general were set forth in a case entitled, *Fergus v. Russell*, and—as I recall—decided in 1915 or 1917, in which they indicated that the attorney general, in addition to any statutory duties, would have such duties as were provided at common law. The case is approximately sixty-six pages long and deals with many other things other than the attorney general, but it goes back to the Crown in England to determine where these common law powers came from.

Now, we do not intend by this section to either reduce or expand the powers of the attorney general, but to simply keep them as they are at the present time.

I have talked to Delegate Tomei concerning this.

Under the state government as it is now constituted, the attorney general represents all of the state officers and writes the attorney general opinions and advises the various executive departments, and *Fergus v. Russell* states, among other things, 'and it is his duty (referring to the Attorney General) to conduct the law business of the state both in and out of the courts.'

Now, the executive officers do have their own attorneys; they are called executive assistants, or executive aides, or some administrative assistants, so they are there.

However, the attorney general is the legal officer for the state, and under our article we hope to keep it just exactly as is.

We do not intend, and it never crossed our mind, that the other executive officers could not hire attorneys as executive aides or executive assistants or technical advisors—whatever you want to call them—as they do at the present time." (3 Proceedings 1312-13.)

The delegates' disinclination to change *Fergus,* as well as their concern over the "house counsel" question, was manifested throughout the discussion of section 15. The following exchange is illustrative.

"MR. TOMEI: Since we are making a record here, I would like to read from part of *Fergus v. Russell,* which I understand to be the law, and see if this accords with the thinking of the committee. This is in Volume 270 of the *Illinois Supreme Court Reports* at page 342, where it says that

The Attorney General is the chief law officer of the state and the only officer empowered to represent the people in any suit or proceeding in which the state is the real party in interest.

Now, I take it that that particular quotation is in accordance with the committee's thinking, as far as it goes anyway. Is that correct?

MR. YOUNG: I would say that that is correct. ***

MR. TOMEI: But your wording is intended to capture that part of *Fergus v. Russell?*

MR. YOUNG: Our wording in this section is simply to maintain the status quo and whatever the *Fergus v. Russell* means is to be applied to this section.

MR. TOMEI: Well, the point I am driving toward, as you know, being the able attorney you are, is that *Fergus v. Russell* directly involved an appropriation to the insurance superintendent and a couple of other agencies for legal services to be rendered in those departments by attorneys in those departments for prosecutions of violations of the laws within their jurisdiction. And it was those appropriations which were struck down under the holding, the wording of which I have just read.

The court, however, went on in what seems to some of us to be non sequitur dicta, stating that the attorney general was the sole official adviser of the executive officers and of all boards, commissions, and departments of the state government.

It is in this area, which I believe is dicta, that the problem gets a little murky; and I take it that the committee is willing at this point to leave the law wherever it is in terms of whether that *Fergus* holding is—or the dicta rather—is dicta or holding or just what it's significance is. But the committee's intention is to leave that problem—vague or ambiguous as it might be—where it is now?

MR. YOUNG: That is correct. We have no intention to change it.

\* \* \*

MR. YOUNG: \*\*\* We are not attempting to broaden or narrow. All we want to do is leave it as it is; and if the courts change the *Fergus v. Russel*, why they can change it." 3 Proceedings 1313-14.

It is evident that there was some confusion among the delegates over the exact meaning of the *Fergus* decision. The confusion, however, arose only over the question of what effect the adoption of the principle of *Fergus* would have on the existing practice of "in-house counsel" within the executive branch. The debates clearly demonstrated that this practice would not be affected by section 15. Equally clear is the conclusion that the delegates intended to retain the holding of *Fergus* that the Attorney General is "the only officer empowered to represent the people in any suit or proceeding in which the State is the real party in interest, except where the constitution or a constitutional statute may provide otherwise." 270 Ill. 304, 342.

The constitutional proceedings, the official explanation submitted to the voters, and the fact that the delegates chose to reenact the language of the 1870 Constitution in regard to the Attorney General, all lead to the conclusion that the principle of *Fergus v. Russel* was incorporated into article V, section 15, of the present constitution. We hold, therefore, that the Attorney General is the sole officer authorized to represent the People of this State in any litigation in which the People of the State are the real party in interest, absent a contrary constitutional directive. Our resolution of this issue makes it unnecessary to consider the EPA's contention that *Fergus v. Russel* rests upon an erroneous interpretation of the common law, or to consider its request that *Fergus* be expressly overruled.

The EPA contends, however, that *Fergus v. Russel* is inapplicable to the instant case regardless of the fact that the principle of the decision is embodied in the present constitution. The EPA's position in this respect is twofold. First, it is contended that the *Fergus* holding should be limited to the prosecution of court cases and not include administrative proceedings. We see no merit in this distinction. There is no indication that the convention delegates considered that *Fergus* supported such a conclusion or that recognition of this distinction would not have constituted a departure from existing law. As Professor Cohn stated in a recent article concerning the powers of the Attorney General, "There can be little quarrel with his claim of right to 'appear as an advocate before administrative tribunals, as well as in court ***.' " (Cohn, *Attorney General and Governor fight over control of lawyers employed by executive agencies,* 8 Ill. Issues 9 (1975); see also Comment, *The Illinois Attorney General: Exclusive Legal Counsel for the State?* 1975 U. Ill. L.F. 470, 477-78.) We conclude that the Attorney General is the sole officer entitled to represent the interests of the State in litigation conducted before the Pollution Control Board.

The EPA also contends that its mandate to prosecute

actions before the Pollution Control Board flows from an independent constitutional source which supersedes the Attorney General's right to be the sole legal representative of the State. Article XI, section 1, of the 1970 Constitution provides:

> "The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy."

The EPA contends that section 4(e) was enacted pursuant to this constitutional directive, and that it is, therefore, a constitutional statute which falls within the stated exception in *Fergus* that the Attorney General's common law powers may be diminished "where the constitution or a constitutional statute may provide." 270 Ill. 304, 342.

A similar contention was rejected in *Stein v. Howlett* (1972), 52 Ill. 2d 570, 586-87, where we held unconstitutional that section of the Illinois Governmental Ethics Act (Supp. to Ill. Rev. Stat. 1971, ch. 127, par. 604A—106) which authorized the Secretary of State to issue advisory opinions interpreting the Act. In *Stein,* the general language of the Secretary of State provision (Ill. Const. 1970, art. V, sec. 16) was considered insufficient to overturn the Attorney General's long-standing authority to issue official advisory opinions.

We consider the language of article XI that the General Assembly "shall provide by law for the implementation and enforcement" of the State's environmental policy to also be too general to overcome the constitutional authority of the Attorney General. Though article XI requires the General Assembly to provide for the implementation and enforcement of environmental policy, it cannot be said that the provision is broad enough to permit the legislature to diminish the Attorney General's power to represent the State in proceedings designed to enforce that policy.

We, therefore, hold that section 4(e) is unconstitu-

tional to the extent that it authorizes the institution and prosecution of proceedings before the Pollution Control Board by an officer other than the Attorney General. Our decision does not render the Environmental Protection Act unconstitutional, however, as the provisions of the Act are severable. Ill. Rev. Stat. 1975, ch. 111½, par. 1051.

Two issues remain to be decided. The Attorney General contests those portions of the trial court's order which dismissed count III of the amended complaint and which allowed judgment on the pleadings as to count II of the counterclaim. Under count III, the Attorney General seeks to hold defendants Briceland and Diver personally liable for all litigation costs and expenses expended by the EPA for the prosecution of enforcement cases before the Board. In count II of the counterclaim, the EPA sought a declaratory ruling that it was entitled to hire independent counsel to defend the instant action brought by the Attorney General. The trial court decided both issues adversely to the Attorney General. We affirm both rulings.

It is well established that a public officer is immune from individual liability for the performance of discretionary duties undertaken in good faith. (*People ex rel. Munson v. Bartels* (1891), 138 Ill. 322, 328; *Lusietto v. Kingan* (1969), 107 Ill. App. 2d 239, 244; *Fustin v. Board of Education* (1968), 101 Ill. App. 2d 113, 121; *Kelly v. Ogilvie* (1965), 64 Ill. App. 2d 144, 147.) The defendants' action of instituting several enforcement proceedings before the Board falls within the above rule. As we have already determined, the defendants were acting pursuant to a statute which required that the EPA prosecute enforcement cases at the administrative level. Though the individual defendants were advised by the Attorney General that they had no right to litigate such matters, we consider that the decision whether to follow the Attorney General's advice or to proceed according to the clear mandate of the statute was an exercise of discretion on defendants' part. The defendants cannot be held liable for

such an exercise of discretion which was made in their official capacities. We therefore affirm the dismissal of count III of the amended complaint.

We also affirm the trial court's entry of judgment on the pleadings as to count II of the counterclaim. Section 6 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1975, ch. 14, par. 6) provides that a court may appoint special counsel in place of the Attorney General whenever the Attorney General "is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend ***." In the present case, the Attorney General filed suit against the defendants for actions which they took pursuant to an apparently valid statute. In these circumstances the Agency and the individual defendants were entitled to counsel other than the Attorney General, who would ordinarily represent their interests in a civil proceeding. The trial court was, therefore, correct in entering a declaratory judgment affirming defendants' right to representation as requested by count II of the counterclaim.

Therefore, the judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*